# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### MAY 3, 2000 Session

## STATE OF TENNESSEE v. DEBIASI SIRNARD KING AND DEWAYNE KING

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Hamilton County**
**No. 207729-207731     Douglas A. Meyer, Judge**

---

**No. E1998-00283-SC-R11-CD - Filed January 19, 2001**

---

We granted review to determine whether the trial court committed reversible error by conducting trial proceedings in violation of a common law rule that prohibits judicial functions on Sunday. The Court of Criminal Appeals reversed the defendants' convictions for second-degree murder and remanded for a new trial, holding that the trial court violated a common law rule prohibiting judicial functions on Sunday and that such proceedings were "absolutely void." We conclude that conducting judicial proceedings on Sunday does not violate the Tennessee Constitution or any state statute and that the justifications for the common law rule are no longer sufficiently persuasive to invalidate Sunday proceedings as a matter of law. We further hold that the issue of whether to conduct judicial functions on Sunday rests within the discretion of the trial court. In exercising this discretion, the trial court should be deferential to the preferences of the litigants, witnesses, jurors, and attorneys; must be mindful of the need for every participant in a trial proceeding to be prepared and rested; must respect and accommodate the genuinely-held religious view of any litigant, witness, juror or attorney; and must weigh all of these concerns against whatever pressing need or compelling interest may necessitate a Sunday proceeding. We conclude that the trial court abused its discretion under the facts of this case and, therefore, affirm the result reached by the judgment of the Court of Criminal Appeals on the separate grounds stated herein.

**Tenn R. App. P.11 Appeal by Permission; Judgment of the Court of Criminal Appeals**
**Affirmed; Judgment of the Trial Court Reversed**

E. RILEY ANDERSON, C.J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; Gordon W. Smith, Associate Solicitor General; Michael J. Fahey, II, Assistant Attorney General; William H.

Cox, III, District Attorney General; and C. Leland Davis and Yolanda Mitchell, Assistant District Attorneys General, for the appellant, State of Tennessee.

John Allen Brooks, Chattanooga, Tennessee, for the appellee, Debiasi Sirnard King.

Lisa M. Mack, Chattanooga, Tennessee, for the appellee, Dewayne D. King.

## OPINION

## Background

On June 25, 1995, the defendants, Debiasi and Dewayne King, along with Devon King, were driving in a white Lincoln convertible in Chattanooga, Tennessee. When they drove by several individuals in another vehicle, derogatory hand signs were exchanged.[1] A short time later, the two groups, still in their vehicles, encountered one another at another location. The defendants fired shots at the other vehicle with a .380 handgun and an AK-47 rifle. One individual, Fernandos Hawkins, was killed.

The defendants were charged with first-degree murder. On the second day of a lengthy trial, Tuesday, July 23, 1996, the trial court alluded to the possibility of conducting proceedings on Sunday. On the fifth day of trial, Friday, July 26, 1996, the trial court indicated that the sequestered jury had expressed its desire to continue its work on Sunday. Counsel for defendants Debiasi and Dewayne King objected. The trial court said that it would not require Sunday proceedings unless counsel for the defendants agreed to do so.

On the following day, Saturday, July 27, 1996, Lisa Mack, counsel for the defendant, Dewayne King, became ill, was unable to function, and had to leave the courtroom. When Mack returned to the courtroom and was still unable to proceed, the prosecutor moved that the trial court sever Dewayne King's case from the others to allow the trial to continue. Counsel for all three defendants objected on the basis that the defenses were intertwined and integral to one another. The prosecutor then proposed that the trial court resume the trial the next day, Sunday, July 28, 1996. Counsel for two of the defendants agreed; however, Lisa Mack indicated that while she felt pressured, holding court on Sunday was preferable to having her client's case severed. The trial court granted the motion to sever Dewayne King's case, but observed that Mack was having trouble thinking due to her illness and commented that the ruling might change the following day.

On Sunday, Lisa Mack, counsel for Dewayne King, appeared and informed the court that she was physically able to proceed. The trial court withdrew its order to sever and all three defendants

---

[1] Although the testimony conflicted, there was evidence that the Kings were members of a gang and that the individuals in the other vehicle were members of a rival gang.

presented evidence in support of their defenses. The trial concluded the next day, Monday, July 29, 1996, with the jury finding Debiasi and Dewayne King guilty of second-degree murder and Devon King guilty of voluntary manslaughter.[2]

The Court of Criminal Appeals reversed the convictions and remanded for a new trial after concluding that the trial court violated a common law rule by holding the trial on Sunday, which rendered the judicial proceeding "absolutely void." We granted this appeal to review the viability of the common law rule which prohibits judicial functions on Sunday.

## Analysis

The prohibition against conducting court on Sunday is expressed in the Latin phrase, "*dies dominicus non est juridicus,*" which means "Sunday is not a court day, or day for judicial proceedings, or legal purposes." Black's Law Dictionary 542 (4th ed. (with Guide to Pronunciation) 1957). The origin of this prohibition was discussed by Lord Mansfield in Swann v. Broome, 3 Burrow 1595, 97 Eng. Rep. 999 (1764), which this Court summarized as follows in Moss v. State:

> [Lord Mansfield] said that anciently the court sat on Sundays; that the ancient Christians practiced this for two reasons: One was in opposition to the [non-Christians], who were superstitious about the observation of days and times, conceiving some to be ominous and unlucky and others lucky; that therefore the Christians laid aside all observance of days; that a second reason they had was that by keeping their own courts always open they prevented Christian suitors from resorting to [non-Christian] courts. But he further observed that in the year 517 a canon was made forbidding the adjudication of causes on Sunday; that this canon was ratified in the time of Theodosius, who fortified it with an imperial constitution. He referred to other subsequent canons adding other holy days. [3] These canons, it seems, were received and adopted by the Saxon kings of England, and were all confirmed by William the Conqueror and Henry II, and so became part of the common law of England. In the course of time, other days were disregarded as nonjudicial, but Sunday retained.

131 Tenn. 94, 100-101, 173 S.W. 859, 860 (1915).

---

[2]     Devon King did not appeal his conviction.

[3]     These canons were enforced throughout the Christian world and included in the Decretals of Gratian in order "'that all people may apply themselves on that day to prayer and serving God.'" State v. McElhinney, 100 N.E.2d 273, 278 (Ohio Ct. App. 1950) (citation omitted).

Professor John Henry Wigmore, in his work <u>A Panarama of the Worlds Legal Systems</u> (1936), discusses the religious origins of the prohibition. He states:

> The Bishop of Rome was early recognized as the successor of Saint Peter . . . . And, in the court of time, the successor of Saint Peter, began to claim universal jurisdiction of law, not only over the Christian Church, but also over temporal kings and princes. The typical expression of this claim is found in a supposed letter of Pope Clement I, A. D. 91 addressed to the clergy, and later included in the so-called Decretals of Isidore, the vital Clauses read:
>
> "Your duty is to teach the peoples. Their duty is to obey you as they would God Himself. . . . And all princes, high or low, and other peoples, tribes, and languages, who do not obey shall be infamous, and shall be cast out from the kingdom of God and the company of the faithful."

<u>Id.</u> at 935. After noting that the power of the ecclesiastical courts and the dominance of canon law reached its peak, perhaps, during the Pontificate of Pope Innocent III, who died in 1216 A. D., Professor Wigmore further observes:

> But in Innocent's day the Roman church was vastly more than that; it claimed and possessed supreme temporal political power over the entire Christian world. Rome was once more the mistress of Europe, and kings were its vassals. Its clergy were immune from the criminal justice of the state. Its legislation covered the whole of human existence from the cradle to the grave; it was upheld by penalties that neither the proudest monarch nor the humblest peasant could escape; and it was administered by a supreme world-judge responsible to no earthly superior for his actions.

<u>Id.</u> at 954. Furthermore, as one court has observed:

> Such was the atmosphere at the time in which it is stated in <u>Swann v. Broome</u>, 3 Burrows, 1595, that these canons were adopted by the Saxon kings, fortified by Edward the Confessor and confirmed by William the Conqueror and Henry II.

<u>State v. McElhinney</u>, 100 N.E.2d at 277.

The prohibition remained a part of the common law despite Henry VIII's break with the Roman Church in the 16th century. After he broke with Rome and established the Church of England, British kings retained, among other titles, the title "defenders of the faith." Id. at 278.

Thus, the common law at and before the separation of the colonies from England included the prohibition against court being held on Sunday. See Moss v. State, 131 Tenn. at 103, 173 S.W. at 861. That common law is the common law of Tennessee, being derived from North Carolina, out of which Tennessee was carved.[4] See id. Both before and after the American Revolution, North Carolina adopted acts generally preserving the common law as it was enforced in England. See id.; see also Smith v. State, 215 Tenn. 314, 318, 385 S.W.2d 748, 750 (1965). The cession act, enacted by the North Carolina General Assembly in 1789 and accepted by the United States Congress in 1790, provided that the laws in force and in use in North Carolina at the time of passing the act should be in full force in the territory ceded until repealed or altered by the legislative authority of the territory. Moss v. State, 131 Tenn. at 103, 173 S.W. at 861 (quoting Smith v. North Memphis Savings Bank, 115 Tenn. 12, 18-19, 89 S.W. 392, 393 (1905)). The Tennessee Constitutions adopted in 1796 and 1835 provided that all laws in force in the territory prior to 1796 and 1835 should continue in force unless altered or repealed by the General Assembly. Id.; see also Tenn. Const. of 1835, art. XI, § 1; Tenn. Const. of 1796, art. X, § II.

This Court recognized the common law rule of *dies dominicus non est juridicus* over 100 years ago and held that "no valid judgment can be rendered on Sunday." Styles v. Harrison, 99 Tenn. 128, 128, 41 S.W. 333, 335 (1897). The Court further observed that "such a judgment is not simply erroneous, but is absolutely void." Id. at 128, 41 S.W. at 333.

Later, in Moss v. State, this Court applied the common law rule, reversing a conviction and remanding for a new trial because the trial court had held court and charged the jury on Sunday. See 131 Tenn. at 111, 173 S.W. at 863. The Court said that "[i]n the absence of a statute allowing it, there can be no doubt that it is unlawful for a court to do any judicial act on Sunday." Id. at 100, 173 S.W. at 860. The Court also observed:

> We so determine, not only in obedience to law, but with deep satisfaction as well, since Sunday is one of the most useful institutions we possess. Aside from its religious aspects, it is a noble police regulation, greatly tending to preserve and increase the public health, affording as it does a stated time of rest from labor, and a

---

[4] The Ohio Supreme Court rejected the Sunday common law rule as not being a part of the common law of Ohio because Christianity is not a part of the law of Ohio and there is no union of church and state as in England. On the contrary, our federal constitution recognizes a complete severance of the church and the state. See State v. McElhinney, 100 N.E.2d at 275.

means of physical and mental recuperation. On those who also regard
and use it as a religious institution it bestows an additional benefit.

Id. at 110, 173 S.W. at 863.

The Court's most recent discussion of the common law rule was over 35 years ago. In Smith v. State, the Court reversed a conviction and remanded for a new trial where the trial court had reread a portion of instructions to the jury on Sunday. The Court observed that it was "axiomatic that the common law recognized the sanctity of the Lord's Day, and this principle has become a part of the law of the State of Tennessee." 215 Tenn. at 318, 385 S.W.2d at 750. The Court found additional support for the common law rule in Tenn. Code Ann. § 39-4001, which had provided:

> If any person shall be guilty of exercising any of the common
> vocations of life, or of causing or permitting the same to be done by
> his children or servants, acts of real necessity or charity excepted, on
> Sunday, he shall, on due conviction thereof before any justice of the
> peace of the county, forfeit and pay ten dollars ($10.00), one-half (½)
> to the person who will sue for the same, the other half (½) for the use
> of the county.

Tenn. Code Ann. § 39-4001 (1955) *repealed by* 1981 Tenn. Pub. Acts ch. 213, § 1. In citing this statutory provision, the Court found that "the public policy of this State unquestionably opposes the commission of any secular or judicial act on Sunday." Smith v. State, 215 Tenn. at 318-19, 385 S.W.2d at 750.

The State argues that the common law prohibition against conducting court proceedings on Sunday is obsolete and that there is no state or federal constitutional prohibition against Sunday judicial proceedings. It urges this Court to abolish the common law rule and contends that the issue should be left to the discretion of the trial court under the rules of procedure. See Tenn. R. Crim. P. 57(b) ("If no procedure is specifically prescribed by rule, trial courts may proceed in any lawful manner not inconsistent with these rules or with any applicable statute."). The defendants assert that the common law rule is still viable and that a new trial is required because the trial court violated the common law rule.

It is appropriate for this Court to consider the continued viability of the common law rule at issue in this case. We have "'not hesitated to abolish obsolete common-law doctrines,'" and indeed have "'a special duty to do so where it is the Court, rather than the Legislature, which has recognized and nurtured' the common law rule." State v. Rogers, 992 S.W.2d 393, 400 (Tenn. 1999) (quoting Dupuis v. Hand, 814 S.W.2d 340, 345 (Tenn. 1991)). We have also said that "we abdicate our function, in a field peculiarly non-statutory, when we refuse to consider an old and court-made rule." Dupuis v. Head, 814 S.W.2d at 345.

There is no Tennessee statute or constitutional provision that prohibits judicial functions on a Sunday. Moreover, we find it significant that after our decision in <u>Smith v. State</u>, the legislature repealed Tenn. Code Ann. § 39-4001 and 4002 in 1981, statutes which had been relied upon by the Court in both <u>Smith</u> and <u>Moss</u> as a reflection of public policy.[5] In addition, the legislature has since authorized the repeal of the so-called "blue laws," which had permitted municipalities to restrict or prohibit by ordinance commercial and retail activities on Sunday. <u>See</u> Tenn. Code Ann. § 6-32-208 (1998). In short, the legislature has never specifically addressed the issue of performing judicial functions on Sunday, but it has repealed several laws that had restricted similar activities on the same traditional grounds.

The common law rule has been addressed in very few of our cases and has not been discussed at all for over 35 years. Moreover, the legislature has since repealed the statutory restrictions on Sunday activities that had served as part of the rationale for our decisions prohibiting judicial acts on Sunday. Finally, the rules of procedure are designed to allow trial courts to exercise discretion in docketing, scheduling, and controlling the course and conduct of judicial proceedings. <u>E.g.</u>, Tenn. R. Crim. P. 2 and 57(b). In short, the common law rule has largely been stripped of its original justification and no longer finds persuasive support in public policy as reflected in our statutory law or rules of procedure. We therefore conclude that it is no longer the public policy of this State that there should be no judicial acts performed on Sunday. Accordingly, we abolish the common law rule prohibiting judicial functions and judicial acts on Sunday. <u>E.g.</u>, <u>Barnes v. Walker</u>, 191 Tenn. 364, 369-70, 234 S.W.2d 648, 650-51 (1950) (discussing departure from the doctrine of *stare decisis*)

In arriving at our conclusion, we are not unmindful of the traditional, religious, and symbolic significance of Sunday. In reality, however, the legislature has changed public policy and has relaxed restrictions on commercial, retail, and vocational activities that traditionally had been invoked on Sunday. We also recognize that our society is not homogenous but is changing rapidly and growing more diverse both in secular and religious activities. While many religious faiths and denominations may maintain Sunday as a day of worship and reflection, other faiths do not, and still other individuals may choose not to worship or reflect on Sunday at all. In any case, as interpreted by this Court the common law rule prohibiting judicial activities on Sunday was not based solely on religious grounds nor could it be without violating the Tennessee Constitution.[6] <u>See</u> <u>Moss v. State</u>, 131 Tenn. at 110, 173 S.W. at 863.

---

[5] Indeed, Tenn. Code Ann. § 39-4001 and 4002 were described by one senator as "archaic and out of date." Tenn. S., <u>Debate on Tenn. S. 628/H.R. 566 on the Floor of the Senate</u>, 92nd Gen. Assembly, 1st Reg. Sess. (Apr. 16, 1981) (Tape: Senate Session #105) (statement of Sen. Ashe).

[6] Article I, § 3 of the Tennessee Constitution provides: "That all men have a natural and indefeasible right to worship almighty God according to the dictates of their own conscience; that no man can of right be compelled to attend, erect or support any place of worship; or to maintain any minister against his consent; that no human authority can, in any case whatever, control or interfere with rights of conscience; and that no preference shall ever be given, by law, to any religious establishment or mode of worship." Tenn. Const. art. I, § 3.

In general, the course and conduct of trial proceedings rests within the sound discretion of the trial court. State v. Cazes, 875 S.W.2d 253, 260 (Tenn. 1994). The rules of procedure, which assist the trial court in exercising its discretion, provide in part that they "shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." Tenn. R. Crim. P. 2. Moreover, although the rules do not specifically address the issue of Sunday proceedings, they do provide that "[i]f no procedure is specifically prescribed by rule, trial courts may proceed in any lawful manner not inconsistent with these rules or any applicable statute." Tenn. R. Crim. P. 57(b). Accordingly, we conclude that the issue of Sunday proceedings is best left to the sound discretion of the trial court.[7]

In exercising this discretion, the trial court should be deferential to the preferences of the litigants, witnesses, jurors, and attorneys and must be mindful of the need for every participant in a trial proceeding to be prepared and rested. The trial court must also respect and accommodate the genuinely-held religious view of any litigant, witness, juror or attorney. Finally, the trial court must weigh all of these concerns against whatever pressing need or compelling interest may necessitate a Sunday proceeding.

Turning to the facts of this case, it is apparent that the trial court abused its discretion by allowing the trial to proceed on Sunday. In the midst of the trial on Saturday, counsel for Dewayne King became ill, was unable to continue, and the trial stopped. The State moved to sever Dewayne King from the co-defendants so that the trial could continue. Although counsel for all three defendants objected, the trial court granted the State's motion but said that the ruling was subject to change. In making this conditional ruling, the trial court observed that counsel was ill and not thinking clearly. On the next day, Sunday, counsel for Dewayne King was able to attend and the trial continued without a severance of defendants.

---

[7] Courts in several other jurisdictions have likewise held that Sunday proceedings are not per se improper or void. E.g., Moon v. State, 375 S.E.2d 442 (Ga. 1988) (trial on Sunday not void where all parties were present and consented); Harris v. State, 645 S.W.2d 447 (Tex. Crim. App. 1983) (Sunday judicial proceedings not void); State v. McElhinney, 100 N.E.2d at 280 (Sunday judicial proceedings not void); State v. Foss, 104 So. 211 (La. 1925) (Sunday proceeding not void). Two jurisdictions have left the matter to the discretion of the trial court either by statute or court rule. La. Code Crim. Proc. Ann. art. 763 (West 1999); N.D. R. Crim. P. 56.

The majority of states, however, address the matter via statute. Of these, a large majority restrict proceedings on Sunday but make exceptions for receiving verdicts, discharging a jury, issuing process, or ministerial acts. E.g., Ark. Code Stat. Ann. § 16-10-114 (Michie 1997); Colo. Rev. Stat. § 16-10-114 (1997); Iowa Code Ann. § 602.1602 (West 1999); Me. Rev. Stat. Ann. tit. 4, § 1051 (West 1998) (including an exception where ordered by the Chief Justice); Mass. Gen. Laws Ann. ch. 213, § 4 (West 1998) (including an exception when there is a "pressing need"); Mich. Comp. Laws Ann. § 435.101 (West 1999); Minn. Stat. Ann. § 484.07 (West 1998); Mo. Ann. Stat. § 476.250 (West 1998); Nev. Rev. Stat. § 1.130 (1997); N.Y. Judiciary Law § 5 (McKinney 1999); R.I. Gen. Laws § 8-7-10 (1998); Wyo. Stat. Ann. § 5-6-202 (Michie 1999). A minority of states appear to restrict Sunday proceedings, with few or no exceptions. E.g., Fla. Stat. Ann. § 34.131 (West 1998); Va. Code Ann. § 1-13-27 (Michie 1999); W. Va. Code § 7-3-2 (1998).

When the prosecution moves for a severance of a defendant in the course of a trial, the motion shall be granted if (1) the defendant consents to the severance and (2) the severance is necessary to achieve a fair determination of guilt or innocence. Tenn. R. Crim. P. 14(c)(ii). Here, the trial court erred in "conditionally" granting a severance. Counsel for Dewayne King never consented to a severance, nor did counsel for the remaining defendants, and there was no showing that a severance was necessary to achieve a fair determination of guilt or innocence of all the defendants. Moreover, the trial court further erred by effectively conditioning the severance on whether counsel for Dewayne King was able to proceed with trial on Sunday. Counsel was faced with a choice: either go to trial on Sunday or have her client severed from the trial altogether. Counsel for the other defendants faced a similar choice as they sought to prevent a severance which they viewed as prejudicial.

Accordingly, we conclude that the trial court abused its discretion in ruling that the trial would proceed on Sunday under the circumstances of this case. See State v. Shirley, ___ S.W.3d ___ (Tenn. 2000) (defining legal standards for finding an "abuse of discretion"). Although the state now contends that counsel for all three defendants consented to the Sunday proceedings, the record clearly indicates that they did so only to avoid a severance of defendants to which counsel for all three defendants objected. Thus, we conclude that the trial court's error requires a remand for a new trial.

## Conclusion

We conclude that performing any judicial function including a trial on Sunday does not violate the Tennessee Constitution or any Tennessee statutory provision and that the justifications for the common law rule are no longer sufficiently persuasive to invalidate Sunday proceedings as a matter of law. We further hold that the issue of whether to conduct judicial functions on Sunday rests within the discretion of the trial court. In exercising this discretion, the trial court should be deferential to the preferences of the litigants, witnesses, jurors, and attorneys; must be mindful of the need for every participant in a trial proceeding to be prepared and rested; must respect and accommodate the genuinely-held religious view of any litigant, witness, juror or attorney; and must weigh all of these concerns against whatever pressing need or compelling interest may necessitate a Sunday proceeding. We conclude that the trial court abused its discretion under the facts of this case and, therefore, affirm the result reached by the judgment of the Court of Criminal Appeals on the separate grounds stated herein. Costs of the appeal shall be taxed to the State.

_____
RILEY ANDERSON, CHIEF JUSTICE