# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
February 25, 2003 Session

## STATE OF TENNESSEE v. DEBIASI SIRNARD KING

### Direct Appeal from the Criminal Court for Hamilton County
No. 207729    Douglas A. Meyer, Judge

---

### No. E2002-00634-CCA-R3-CD
**June 2, 2003**

---

The defendant was convicted by a jury of second degree murder and was sentenced to twenty-two years in the Tennessee Department of Correction.  The defendant brings this appeal and contends the following:

    (1) The participation of a special prosecutor, hired by the victim's family, is a violation of the defendant's constitutional rights;

    (2) The trial court erroneously denied defense counsel the opportunity to cross-examine the driver of the vehicle containing the victim, Fernando Hawkins;

    (3) The trial court failed to give a curative instruction after Detective Hawkins stated that he obtained a warrant for first degree murder of the defendant;

    (4) The trial court failed to charge the jury on the lesser included offense of facilitation of second degree murder; and

    (5) The trial court erroneously sentenced the defendant to twenty-two years in the Tennessee Department of Correction.

We conclude the trial court did not err and affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ROBERT W. WEDEMEYER, JJ., joined.

John Allen Brooks, Chattanooga, Tennessee, for the appellant, Debiasi Sirnard King.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; William H. Cox, III, District Attorney General; and Rodney C. Strong, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On June 25, 1995, the victim, Fernando Hawkins, was killed after being shot by the defendant, Debiasi Sirnard King. The shooting incident occurred after gang signs were exchanged between the victim and his two companions and the defendant and his two co-defendants. The defendants waited on the side of a street and fired shots at the victim's car as he and his two passengers passed. The defendant's gun fired a shot which entered the car in which the victim rode, fatally wounding the victim.

On October 11, 1995, the defendant and his co-defendants were indicted for the offense of first degree murder. After a jury trial, the defendant was convicted of second degree murder. On appeal, this Court reversed the defendant's conviction and remanded it for a new trial. See State v. Debiasi Sirnard King and Dewayne King, No. 03C01-9801-CR-00015, 1999 Tenn. Crim. App. LEXIS 420 (Tenn. Crim. App. April 30, 1999, at Knoxville). The State of Tennessee applied for permission to appeal to the Supreme Court, which was granted, and on January 19, 2001, while reversing in part this Court, the Supreme Court granted the defendants a new trial. See State v. Tennessee v. Debiasi Sirnard King and Dewayne King, 40 S.W.3d 442 (Tenn. 2001).

The defendant was convicted by a jury of second degree murder and was sentenced to twenty-two years in the Tennessee Department of Correction. The defendant appeals, contending the following:
(1) The participation of a special prosecutor, hired by the victim's family, is a violation of the defendant's constitutional rights;
(2) The trial court erroneously denied defense counsel the opportunity to cross-examine the driver of the vehicle containing the victim, Fernando Hawkins;
(3) The trial court failed to give a curative instruction after Detective Hawkins testified he obtained the original arrest warrant against the defendant for first degree murder of the defendant;
(4) The trial court failed to charge the jury on the lesser-included offense of facilitation of second degree murder; and
(5) The trial court erroneously sentenced the defendant to twenty-two years in the Tennessee Department of Correction.

## Analysis

**A. Special Prosecutor**

The defendant contends that it is a violation of his due process rights under the Fourteenth Amendment to the United States Constitution and Article I, Section 8 of the Tennessee Constitution to allow the participation of a special prosecutor representing a victim or a family member of a victim in the prosecution of a criminal case. On August 1, 2001, during the defendant's second trial, Assistant District Attorney Lee Davis, who tried the defendant in his first trial and who is now in private practice, filed a Notice of Appearance as a special prosecutor. The record reveals that Mr.

Davis was retained by the victim's family for one dollar ($1.00). Upon Mr. Davis' filing with the court, the defendant filed an objection to the employment of the former Assistant District Attorney. The trial court overruled the defendant's objection to Mr. Davis' serving as a special prosecutor.

Pursuant to Tennessee Code Annotated section 8-7-401(a), a "victim of crime or the family members of a victim of crime may employ private legal counsel to act as co-counsel with the district attorney general or the district attorney general's deputies in trying cases, with the extent of participation of such privately employed counsel being at the discretion of the district attorney general." The appointment of a special prosecutor does not violate either the United States Constitution or the Tennessee Constitution. See State v. Bennett, 798 S.W.2d 783 (Tenn. Crim. App. 1990). There is no requirement that a district attorney general show cause for the participation of a special prosecutor. State v. Eldridge, 951 S.W.2d 775, 781 (Tenn. Crim. App. 1997); State v. Voltz, 626 S.W.2d 291 (Tenn. Crim. App. 1981).

The record reveals that Mr. Davis did not represent the victim's family in any civil matters and that his only role would be to assist the district attorney's office in prosecuting the case should the case go to trial. From the record, it is also apparent that Assistant District Attorney Rodney Strong led the prosecution, questioned eight of the twelve witnesses presented at trial, cross-examined all five defense witnesses, and made the final closing argument. There is no evidence that the defendant's due process rights were compromised by Mr. Davis' participation. We conclude that the defendant's constitutional rights were not denied by the involvement of Mr. Davis as a special prosecutor.

## B. Cross Examination of Greg Kelsey

The defendant contends that the trial court erroneously limited his cross-examination of Greg Kelsey, a witness, regarding whether he was on bond at the time of the shooting. The defendant contends that it was relevant to establish a reason to stop and clean out the car before taking the victim to the hospital. The defendant contends the time between the shooting and the arrival of the victim at the hospital is crucial. The testimony is as follows:

Q: Do you know what time you got to the hospital?
A: No, sir.
Q: But ten, fifteen minutes after that?
A: However long it take to get from Greenwood to Erlanger the route I explained.
Q: And you went straight down Greenwood, hit Tunnel Boule - – I mean, not Tunnel - - hit Wilcox, turned right, went through the tunnels. Did you run the red lights and all?
A: Yes, I think so.
Q: Okay. And you went down to Holzclaw?
A: Yes.
Q: Turned left, went to 3rd Street, turned right?
A: Yes.

Q: And then went to Erlanger emergency room?
A: Yes.
Q: Okay. How, were you speeding? Were you going fast?
A: As fast as I could go besides the traffic.
Q: And you didn't stop anyplace along the way?
A: No, sir.
Q: Did you have any of that marijuana still on you?
A: I'm not sure. Can't remember.
Q: You don't know?
A: No.
Q: But you had it the night before?
A: Yes.
Q: Did you smoke it all up?
A: I'm not sure. Can't remember.
Q: Now, you were out on bond at the time of this robbery?

At this time, the prosecution objected to the relevance of the question. The defense stated to the trial court that if the witness was facing charges and was in possession of an illegal substance at the time of the incident, there would have been a reason to place him into custody. The trial court sustained the objection, finding the question was not relevant since the witness had admitted to being convicted.

A defendant has a constitutional right to confront witnesses, but the defendant's right to confrontation "does not preclude a trial court from imposing limits upon cross-examination which take into account such factors as harassment, prejudice, issue confusion, witness safety, or merely repetitive or marginally relevant interrogation." State v. Reid, 882 S.W.2d 423, 430 (Tenn. Crim. App. 1994). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. "The propriety, scope, manner, and control of the cross-examination of witnesses, however, rests within the sound discretion of the trial court." State v. Dishman, 915 S.W.2d 458, 463 (Tenn. Crim. App. 1995).

The record reveals that on the day the incident took place, the victim and his two companions drank beer and consumed illegal drugs while in Kelsey's car. Defense counsel established in his questioning that the witness had been convicted. The defendant contends that this witness should have been cross-examined vigorously to establish that there were no beer bottles found in the vehicle and that the witness must have stopped to clean out his car. This is speculative. However, the jury heard testimony from the witness in which he admitted smoking marijuana on the night before the incident and that no beer bottles or contraband were found in the car, which was searched at the hospital. Without further questioning, a reasonable jury could easily "read between the lines," given the lapse of time between the shooting and Kelsey's arrival at the hospital. To establish that the witness was on bond at the time of the instant offense was irrelevant, and we conclude the trial court did not abuse its discretion in its limitation of cross-examination.

## C. Curative Instruction

The defendant contends the trial court failed to give a curative instruction after Detective Tim Carroll stated that he obtained a warrant charging the defendant with first degree murder. The defendant contends that the detective was referring to the original charge of first degree murder and that because he had been acquitted of first degree murder at the original trial, the jurors in this case were informed that the defendant was charged with second degree murder. The defendant is referring to the following exchange:

Q: On the - - after, after you observed the crime scene and after you observed the crime scene and after you had done the things at that location, at some point did you develop an idea that the Kings were suspects in this case?

A: Yes, I did. It was after we conducted interviews, we were able to identify Debiasi King through a photographic lineup, and I obtained an arrest warrant for first degree murder charging Debiasi King with the murder of Fernando Hawkins.

At this point, the prosecution asked two more questions before defense counsel asked to approach the bench to address the aforementioned exchange. The prosecution admitted that it had made a mistake by asking the question and stated that further questioning would not involve the original warrant. The trial court judge addressed this issue by stating: "That's all right. I don't think the jury caught it. And I think if I instructed them, that it would be – but you can bring out that the grand jury or something." The trial court stated that the jury would be instructed on second degree murder and that would take care of the problem with the question. The defendant contends that it was prejudicial to introduce evidence that a first degree murder warrant had been issued for his arrest and demands a new trial.

There are three non-exclusive factors which trial courts have applied in determining whether a mistrial was necessary after improper testimony was presented to the jury: (1) whether the State elicited the testimony; (2) whether the trial court gave a curative instruction; and (3) the relative strength or weakness of the State's proof. State v. Demetrius Holmes, No. E2000-02263-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 923, at *11 (Tenn. Crim. App. Nov. 30, 2001, at Knoxville), perm. to app. denied (Tenn. 2002). However, a defendant is not entitled to relief when he or she "failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a). The defendant did not ask the trial court for a curative instruction. When a defendant fails to request a curative instruction, he waives the issue on appeal. See State v. Jones, 733 S.W.2d 517, 522 (Tenn. Crim. App. 1987).

In the instant case, the defendant did not request a curative instruction. Furthermore, the defendant has failed to show any prejudice. The defendant's guilt of first degree murder was never an issue at trial. Following the proof, the trial court instructed the jurors to consider whether the defendant was guilty of second degree murder or the lesser-included offenses of voluntary manslaughter, reckless homicide, or criminally negligent homicide. The defendant has failed to demonstrate how this issue affected the outcome of his trial.

## D. Facilitation of Second Degree Murder

The defendant contends that the trial court failed to charge the jury with the offense of facilitation of second degree murder as a lesser included offense of second degree murder. The record indicates the trial court instructed the jury on second degree murder, voluntary manslaughter, reckless homicide, and criminally negligent homicide. The defendant contends that the trial court's error is not harmless and is grounds for reversal of the verdict and a new trial.

A trial court's decision regarding whether a lesser included offense should be submitted to the jury is a mixed question of law and fact. State v. Bowles, 52 S.W.3d 69, 74 (Tenn. 2001). Tennessee Code Annotated section 40-18-110(a) mandates that a trial court must charge the jury as to the law of each offense which is "included" in an indictment, namely the charged offense and any lesser included offenses, regardless of a defendant's request for such an instruction. "In applying the lesser included offense doctrine, three questions arise: (1) whether an offense is a lesser included offense; (2) whether the evidence supports a lesser included offense instruction; and (3) whether an instructional error is harmless." State v. Allen, 69 S.W.3d 181, 187 (Tenn. 2002). State v. Burns, 6 S.W.3d 453, 466-67 (Tenn. 1999) outlines the test for determining when an offense may be considered a lesser included offense of an indicted offense.

A person is guilty of facilitation of a felony "if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under Tennessee Code Annotated section 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a). Facilitation of second degree murder is a lesser included offense of second degree murder under part (c) of the test set forth by the supreme court in Burns, 6 S.W.3d at 467. Facilitation of a felony is a lesser degree of criminal responsibility for the conduct of another. Burns at 470.

However, facilitation is a separate and distinct theory of liability from that of a principal offender. State of Tennessee v. Jared Michael Christein, No. E2001-01856-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 189, at *25 (Tenn. Crim. App. Mar. 4, 2003, at Knoxville). In the instant case, the defendant was not convicted of second degree murder based upon a theory of criminal responsibility. The record reveals that the defendant admitted to firing the semi-automatic rifle which held the bullet that killed the victim. The proof established that the defendant was the principal offender and was solely responsible for the death of the victim. For these reasons, we conclude that the trial court did not err in excluding facilitation of second degree murder in the instructions to the jury.

## E. Sentencing

The defendant contends that the trial court improperly sentenced him to twenty-two years in the Tennessee Department of Correction. Specifically, the defendant argues that because he was convicted on June 25, 1995, before the change in the sentencing statute, he should not have been sentenced under the present guidelines. Further, the defendant contends that only the enhancing

factors applicable prior to July 1, 1995, should apply and that the trial court erred in applying enhancement factors (1), (2), and (8). The defendant does not challenge the trial court's application of enhancement factor (9). The defendant contends that the trial court should have applied mitigating factors (2), (3), (6), and (13). The defendant requests that his sentence be reduced to a minimum of fifteen (15) years.

When an accused challenges the length and manner of service of a sentence, our Court conducts a de novo review on the record with a presumption that the trial court is correct in its determinations. Tenn. Code Ann. § 40-35-401(d). The presumption is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles, as well as all facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1994).

In conducting a de novo review of a sentence, we must consider: (1) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103 and -210.

In calculating the sentence for a felony conviction committed before July 1, 1995, the presumptive sentence is the minimum within the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c) (1990) (amended July 1, 1995, to provide that the presumptive sentence for a Class A felony is the midpoint in the range). If there are enhancement factors, but no mitigating factors, the trial court may set the sentence above the minimum. Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35-210. The sentence may then be reduced within the range by any weight assigned to the mitigating factors present. Id.

Second degree murder is a Class A felony and is subject to a sentence range of fifteen to twenty-five years for a Range I offender. See Tenn. Code Ann. § 40-35-112(a)(1). The trial court is to determine the appropriate sentence by beginning at the minimum sentence within the range, increasing the sentence within the range according to enhancement factors present, and then decreasing the sentence according to the presence of any mitigating factors. See Tenn. Code Ann. § 40-35-210(c)-(e) (1990); State v. Hampton, 24 S.W.3d 823, 831 (Tenn. Crim. App. 2000). Presently, the presumptive sentence is the midpoint within the range. See Tenn. Code Ann § 40-35-210(c). In the instant case, the defendant was given the benefit of the pre-1995 guidelines as the trial court began its determinations at fifteen years, the minimum sentence within the range.

In the instant case, the trial court increased the defendant's sentence upon the finding of enhancement factors (1), (2), (8), and (9). The trial court found that the enhancement factors outweighed any mitigating factors, despite the fact that the defendant seemed remorseful.

**Enhancement Factor (1)**

The defendant contends that the trial court inappropriately applied enhancement factor (1). In 1995, enhancement factor (1) was used to enhance a sentence based upon a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. See Tenn. Code Ann. § 40-35-114(1) (1990). The trial court applied enhancement factor (1) based upon the defendant's conviction for reckless endangerment, three juvenile convictions for felony theft, and one adult misdemeanor assault conviction.

The defendant contends that enhancement factor (1) is inapplicable because he has only one adult misdemeanor conviction and his juvenile record cannot be used for this enhancement factor. The State argues that prior to the changes in sentencing, juvenile adjudications were properly considered to enhance a sentence under factor (1). See State v. Jackson, 60 S.W.3d 738, 742 (Tenn. 2001); State v. Adams, 864 S.W.2d 31, 34 (Tenn. 1993).

The presentence report indicates that the defendant engaged in chronic criminal behavior from the age of fourteen to nineteen years old, at which time he committed the present offense. Evidence presented at his sentencing hearing illustrated the defendant's extensive involvement in gang activity. Trial testimony indicated the defendant, as well his co-defendants, used illegal drugs, drank alcohol, and carried the defendant's loaded weapons in their vehicle before the victim was shot. We conclude that the trial court's decision to apply enhancement factor (1) to the defendant's sentence was not in error, given the defendant's extensive criminal history and behavior.

**Enhancement Factor (2)**

The defendant contends the trial court erred in finding that he was a leader in the commission of the offense. See Tenn. Code Ann. § 40-35-114(2). The defendant contends the record does not demonstrate that he organized or led in the commission of this act. The record reflects that the defendant and his co-defendants engaged in the altercation after exchanging "gang signs" and then fired weapons at the car carrying the victim. The record reveals that the defendant was older than his co-defendants and furnished the weapons used in the offense. The defendant, alone, loaded the weapons and placed them in the vehicle before the incident took place. For these reasons, we conclude that the trial court did not err in its application of enhancement factor (2).

**Enhancement Factor (8)**

The defendant contends that the trial court inappropriately applied enhancement factor (8). The trial court found that the defendant had a previous history of unwillingness to comply with the conditions of a sentence involving release into the community. Tenn. Code Ann. § 40-35-114(8). The record reveals the trial court based its decision to apply factor (8) on the information that the defendant violated the terms of his probation by committing new offenses and was, accordingly, taken into the custody of the Department of Youth Services. The presentence report reflects that the

defendant, while a juvenile, violated the terms of his probation after committing theft over one thousand dollars ($1,000), the same offense for which he was originally granted probation.

The defendant contends that the trial court should not have based enhancement factor (8) on his juvenile record. Our supreme court has found that a juvenile probation violation may be used to enhance a defendant's sentence under enhancement factor (8). See State v. Jackson, 60 S.W.3d 738, 743-44 (Tenn. 2001). Therefore, we find that the trial court did not err in its application of enhancement factor (8).

## Mitigating Factors

The defendant contends that the trial court should have considered as mitigating factors that: (1) he acted under strong provocation; (2) substantial grounds exist that tended to excuse his conduct; and (3) he lacked substantial judgment because of his age. See Tenn. Code Ann. § 40-35-113 (2), (3), (6).

The trial court stated it did not find that the defendant acted under strong provocation and that "substantial grounds existed to tend to excuse or justify the defendant's criminal conduct through failing to establish a defense." The trial court found that mitigating factor (6) did not apply for the defendant or for his co-defendants simply because the defendant was under eighteen years of age at the time of the offense. The trial court addressed the defendant and one of his co-defendants by stating,

> . . . the trial court - - and this is State v. Kelly - - "trial court properly declined to apply mitigating factor 6 regarding defendant's youth where a defendant was streetwise and testified he had his gun with him the day of the shooting, because he knew he was going to be out on the street, a statement which reflects a calculated judgment about the prospects for violence in the situation in which defendant placed himself." And they knew. They went back and armed themselves. So I do not find number 6 for either of them.

Although the trial court noted that the defendant had improved himself while incarcerated, was educating himself, and seemed somewhat remorseful, the record does not support the application of mitigating factors (2), (3), or (6).

## Conclusion

Accordingly, we affirm the judgments of the trial court and the defendant's sentence of twenty-two years in the Tennessee Department of Correction.

_____
JOHN EVERETT WILLIAMS, JUDGE