# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### February 19, 2014 Session

## PEPPER & BROTHERS P.L.L.C. v. BRETT JONES

### Appeal from the Circuit Court for Davidson County
#### No. 12C3121     Philip E. Smith, Judge

---

### No. M2013-01668-COA-R3-CV - Filed April 4, 2014

---

A homeowner who was sued by a contractor hired an attorney to defend against the suit. The homeowner and the attorney entered into a contract whereby the attorney would charge $225 per hour, calculate the bill in quarter hour increments and bill monthly. The homeowner made his monthly payments as the litigation progressed, but after he became dissatisfied with the service he was getting, he stopped paying . He subsequently discharged the attorney and hired other counsel. The attorney sent the homeowner a final bill for $8,529. The homeowner paid $4,000 and offered to settle the remainder for a lesser amount. The attorney refused and brought suit against the homeowner for the unpaid balance. The trial court entered judgment in favor of the attorney. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

BEN H. CANTRELL, SR. J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Brett Jones, Nashville, Tennessee, Pro Se. appellant.

Roger Alan Maness, Clarksville, Tennessee for the appellee, J. Ross Pepper, Pepper & Brothers PLLC.

### OPINION

### I.  A CONTRACTOR SUES A HOMEOWNER

Brett Jones and his company, Big Borassa Music, LLC, entered into a contract with a business called American Style Renovations to do extensive renovations on Mr. Jones's home on Belmont Boulevard in Nashville. After disagreements arose about the contractor's charges, American Style Renovations filed suit against Mr. Jones in the Chancery Court of

Davidson County, asking for a $70,000 judgment.  Mr. Jones hired attorney J. Ross Pepper to represent him in the matter.  Mr. Jones and Mr. Pepper entered into a Legal Representation Agreement on May 25, 2011.[1]

The contract stated that Mr. Pepper would charge $225 per hour for each hour that he worked on Mr. Jones' case.  Mr. Pepper would also charge $75 an hour for any work done on Mr. Jones' behalf by his office paralegal.  Both attorney time and paralegal time would be billed in quarter hour (.25) increments.  Mr. Jones also authorized Mr. Pepper to incur expenses on his behalf, such as photocopies, postage, filing fees and court reporter expenses.

The following statement was printed at the bottom of the contract:

> Any expressions or statements on the part of Attorney concerning the outcome of Client's matter are based upon professional judgment, but are not guarantees of any particular result.  Client understands that, even after spending money for fees and expenses, it is possible that a judgment may be entered against Client and/or that Client may not recover any money.

According to Mr. Jones, much of the work performed by Mr. Pepper was directed towards trying to arrange mediation between Mr. Jones and American Style Renovations.  Mr. Jones sent Mr. Pepper several e-mails questioning the wisdom of using mediation because the positions of the parties were so far apart.  The mediation was nonetheless conducted on November 21, 2011, but it was unsuccessful.  Mr. Pepper billed Mr. Jones monthly for his efforts.  Mr. Jones paid Mr. Pepper about $10,200 in fees over a period of nine months.  After mediation failed, Mr. Jones requested that Mr. Pepper "cap" his fees going forward.  Mr. Pepper refused.

Mr. Jones subsequently secured the services of another attorney and he discharged Mr. Pepper on December 11, 2011.  Mr. Pepper transferred the case files to Mr. Jones' new attorney, and he sent Mr. Jones a final bill for $4,529.29, which included the mediator's fee.  Mr. Jones refused to pay the bill and offered to settle with a final payment of $3,000.  Mr. Pepper refused the offer and also refused to settle the dispute through arbitration.  Mr. Jones filed a complaint about the fees with the Board of Professional Responsibility, which recommended that the fee dispute be mediated.

## II.  MR. PEPPER SUES HIS CLIENT

---

[1]Mr. Jones does not deny that he signed the legal representation agreement, although his signature is not on the copy of the agreement found in the appellate record.

On August 3, 2012, Mr. Pepper filed suit against Mr. Jones through his attorney, Roger Maness, in the Circuit Court of Davidson County. He asked the court to award him a money judgment of $4,529.29 plus discretionary costs, court costs, and prejudgment interest. Mr. Jones responded on September 28, 2012 by sending a letter to the Clerk of the Circuit Court and to Mr. Maness, which he titled "Response of the defendant to the Circuit Court."[2]

Mr. Jones alleged that the invoice was incorrect and that Mr. Pepper had padded it for his own benefit. He also noted that the amount at issue was small enough to be settled in small claims court (meaning presumably General Sessions), and he asked the Circuit Court to remand the matter to said court. He also suggested that Mr. Pepper had filed his suit in Circuit Court in order to drive up Mr. Jones' legal costs. Mr. Jones apparently resolved to counter this maneuver by deciding to represent himself, for he did so from that moment forward.

On December 2, 2012, Mr. Jones sent a letter to Mr. Maness. He reiterated his offer to settle Mr. Pepper's suit for $3,000, repeated his point that the amount sued for was well within the jurisdictional limits of the General Sessions court and contended that the matter could more economically be settled before the lower court. He also mentioned, for the first time, the possibility of a jury trial: "If the Judge allows you to waste taxpayers monies in this manner I will be requesting a jury trial."

On April 25, 2013, Mr. Jones filed a motion asking the court to order mediation. Mr. Pepper responded, arguing that mediation should be denied because it would not serve the purpose of judicial economy, and he asserted that it would take not more than half an hour of trial time for Mr. Pepper to present his case-in-chief. The trial court denied the motion for mediation.

The case was scheduled for hearing on June 5, 2013. On May 28, 2013, Mr. Jones filed a motion to continue the hearing. He asserted that he expected Chancellor Lyle to enter findings of facts and conclusions of law in the underlying suit between himself and American Style Renovations by the middle of July, that those findings of facts and conclusions law were a necessary part of his defense, and that "I anticipate the Court awarding damages to me under claims that Mr. Pepper failed to even recognize." He also noted that the case was set for a bench trial, asserted that he had requested a jury trial in a timely manner, and asked for the matter to be continued so it could be heard by a jury.

---

[2]The timing and content of Mr. Jones' letter indicates that it was meant to be an Answer to Mr. Pepper's Complaint, a pleading authorized by Tenn. R. Civ. P. 7.01.

The hearing of the case was conducted as scheduled. Mr. Jones represented himself pro se. At the outset of the proceeding, Mr. Jones requested that the court grant his motions to continue the trial until mid-July and to grant him a jury trial. The court denied the motions. Mr. Jones and Mr. Pepper were the only witnesses to testify.

When Mr. Pepper took the stand, Mr. Jones questioned him about the circumstances behind the decision to bring the underlying case to mediation. Mr. Pepper testified that it was his judgment that mediation was the best and most economical strategy to follow. Mr. Jones then admitted into evidence three separate e-mails he had sent to Mr. Pepper, expressing his doubt about the wisdom of using mediation, and indicating that he had only reluctantly agreed to go along with Mr. Pepper's recommendation.

Mr. Jones also questioned Mr. Pepper closely about his quarter hour increment billing method. Mr. Pepper acknowledged that if he performed a 46 minute chore related to Mr. Jones' case, he would bill for a full hour. Similarly, if he took a five minute phone call related to the case, he would charge for a quarter hour. Mr. Jones then pointed to the clause in the legal representation agreement that said that Mr. Pepper would be paid $225 per hour for "each hour of time" which he spent working on Mr. Jones' case, and he pointed out that in both examples cited above, the actual time devoted to the case would be less than the amount billed for.

During his questioning of Mr. Pepper, Mr. Jones contended that the court could use the concept of "block billing" to reduce his contractual liability to Mr. Pepper. He asserted that "courts in Tennessee and all over the country" have "routinely discounted" attorney invoices on the basis of "block billing." Asked if he had a case on point, he said "the case of *Randolph v. Schubert*. It's 2007." However, we have been unable to find that case, or any other Tennessee case discussing the practice of block billing.[3]

At the conclusion of testimony and of brief closing arguments by both sides, the trial court announced its decision from the bench. The court characterized the case as a simple breach of contract action, and held that Mr. Jones had failed to establish any irregularity in the billing practices of Mr. Pepper, that required an adjustment in his bill, other than one small error.[4] The court accordingly ruled that Mr. Pepper was entitled to the entire amount he sued for, minus the small sum attributable to that error. It also awarded Mr. Pepper pre-

---

[3]The trial court admonished Mr. Jones about offering argument during cross-examination, and stated that in any case it was unfamiliar with block billing.

[4]Mr. Jones admitted that he had mistakenly billed 6.25 hours of paralegal time at the rate of $100 per hour, instead of the $75 per hour stated in the contract.

judgment interest at the rate of 10% per year. The court's ruling was memorialized in an order filed on July 18, 2013. The appeal followed.

### III. ISSUES ON APPEAL

### A. A Contract Question

We must state at the outset that parties who decide to represent themselves are entitled to fair and equal treatment by the courts, and that the courts should take into account that many *pro se* litigants have no legal training and little familiarity with the judicial system. *Hessmer v. Hessmer*, 138 S.W.3d 901 (Tenn. Ct. App. 2003); *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000); *Paehler v. Union Planters Nat'l Bank, Inc.*, 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997). The courts accordingly give *pro se* litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs. *Whitaker v. Whirlpool Corp.*, 32 S.W.3d at 227; *Paehler v. Union Planters Nat'l Bank, Inc.*, 971 S.W.2d at 397; *Irvin v. City of Clarksville,* 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988).

The courts must also be mindful, however, of the boundary between fairness to a *pro se* litigant and unfairness to the *pro se* litigant's adversary. Thus, the courts must not excuse *pro se* litigants from complying with the same substantive and procedural rules that represented parties are expected to observe. *Edmundson v. Pratt*, 945 S.W.2d 754, 755 (Tenn. Ct. App. 1996); *Kaylor v. Bradley*, 912 S.W.2d 728, 733 n. 4 (Tenn. Ct. App. 1995).

The trial court found this case to be a simple breach of contract action. Mr. Jones disagrees with that characterization, for he insists that his case implicates far more consequential issues. Before addressing his issues, however, we must note that this case did indeed arise out of a contract dispute, that Mr. Pepper brought suit for breach of that contract, and that the law regarding contracts and their breach is therefore a proper subject of inquiry for us in this appeal.

"The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern." *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002). Courts defer to the contracting process by enforcing written contracts, which establish the rights and obligations of the parties, according to their plain terms, without favoring either contracting party. *Cocke County Bd. of Highway Commissioners v. Newport Utilities Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985); *Hardeman County Bank v. Stallings*, 917 S.W.2d 695, 699 (Tenn. Ct. App. 1995).

It is often said that the courts will not relieve parties of their contractual obligations simply because these obligations later prove to be burdensome or unwise. *Boyd v. Comdata*

*Network, Inc.*, 88 S.W.3d 203, 223 (Tenn. Ct. App. 2002)(citing *Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 597–98 (Tenn. Ct. App. 1999)).  But a contract between an attorney and a client is subject to extra scrutiny because it creates a fiduciary and confidential relationship between the parties.  *Hager v. Fitzgerald*, 934 S.W.2d 668, 670 (Tenn. Ct. App. 1996).

Attorneys must deal with their clients in utmost good faith. This level of good faith is significantly higher than is required in other business transactions where the parties are dealing at arm's length. The client must be able to trust the attorney to deal fairly at all times, including during the negotiation of the attorney's terms of employment. *Alexander v. Inman,* 974 S.W.2d 689, 693-94 (Tenn. 1998)(citing *Cummings v. Patterson*, 442 S.W.2d 640, 643 (Tenn. Ct. App. 1968)).  Therefore, an attorney's fees must be "reasonable" while no such requirement of reasonableness is read into most other contracts.

## B.  The Reasonableness of Mr. Pepper's Fees

Mr. Jones argues that the trial court entered a judgment based upon an unreasonable fee. He also contends that the trial court did not follow the proper procedures to determine the reasonableness of Mr. Pepper's fees because, in pronouncing its judgment, it did not refer to or apply the ten factors for evaluating the reasonableness of an attorney's fee listed at Rule 1.5 of the Tennessee Rules of Professional Conduct.  There is no requirement, however, that a trial court specifically refer to Rule 1.5 when ruling on the question of the reasonableness of an attorney's fee.[5]

---

[5]Tenn. R. Sup.Ct. 8, RPC 1.5. reads as follows:
(a) A lawyer's fee and charges for expenses shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) The fee customarily charged in the locality for similar legal services;
(4) The amount involved and the results obtained;
(5) The time limitations imposed by the client or by the circumstances;
(6) The nature and length of the professional relationship with the client;
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services;
(8) Whether the fee is fixed or contingent;
(9) Prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and
(10) Whether the fee agreement is in writing.

Mr. Jones' argument especially focuses on the fourth factor on the list: "[t]he amount involved and the results obtained." He notes that Mr. Pepper recommended mediation over his objections, and that mediation failed. He also asserts that despite Mr. Pepper's recommendation that he settle with the contractor in the underlying case by paying him $18,000, Mr. Jones was ultimately awarded a judgment for $96,000 plus legal fees.

Mr. Jones accordingly argues that "the results obtained" did not justify an obligation to pay the full invoiced amount. We note, however, that while the results obtained under a contingency fee arrangement may be the primary determinant of the client's financial obligation, that is not so under the type of contractual arrangement in this case. It is only one of ten factors to consider when determining whether a fee is reasonable. Further, the legal representation agreement itself stated that while Mr. Pepper would exercise his professional judgment, that did not guarantee any particular result.

Our courts have long held that "[a] lawyer who discharges his or her duties appropriately is entitled to the reasonable, agreed-upon compensation without regard to the actual benefit the services might have been to the client." *Fell v. Rambo,* 36 S.W.3d 837, 852 (Tenn. Ct. App. 2000)(citing *Spofford v. Rose*, 237 S.W. 68, 76 (Tenn. 1922); Bills v. Polk, 72 Tenn. 494, 496 (1880); *Adams v. Mellen,* 618 S.W.2d 485, 488 (Tenn. Ct. App. 1981)).

Mr. Pepper testified that his customary fee was $275 an hour, but that he reduced it for Mr. Jones, that he exercised his professional judgment on behalf of Mr. Jones, that he worked efficiently, and that his bill was a true and accurate accounting of the money rightfully owed to him for the services he had rendered. Mr. Jones did not present any countervailing evidence other than the small error in the billing for paralegal time that he pointed out.

The reasonableness of an attorney's fee depends on the facts of each individual case. *Alexander v. Inman*, 903 S.W.2d 686, 695 (Tenn. Ct. App. 1995) The trial court's determination of a reasonable attorney's fee is "a subjective judgment based on evidence and the experience of the trier of facts." *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011) (quoting *United Med. Corp. of Tenn., Inc. v. Hohenwald Bank & Trust Co.*, 703 S.W.2d 133, 137 (Tenn. 1986)).[6]

---

[6]We are aware that most of the cases we have cited do not involve fee disputes between attorneys and their clients, but rather, for the most part, the application of statutes or contracts that provide for an award of "reasonable attorney fees" to the prevailing party, without reference to any particular fee schedule. Nonetheless, in light of the requirements of Rule 1.5, we believe that our courts are entitled under some circumstances to inquire into the reasonableness of contracts for services between attorneys and clients.

We review a trial court's determination regarding the reasonableness of an attorney fee under the abuse of discretion standard. *United Med. Corp. of Tenn. v. Hohenwald Bank & Trust Co.*, 703 S.W.2d at 137; *Killingsworth v. Ted Russell Ford, Inc.*, 104 S.W.3d 530, 534 (Tenn. Ct. App. 2002); *Coleman v. Coleman*, No. W2012-02183-COA-R3-CV, 2013 WL 5308013, at *11 (Tenn. Ct. App. Sept. 19, 2013)(no Tenn. R. App. P. 11 application filed). Thus, an appellate court will normally defer to a trial court's award of attorney's fees unless there is "a showing of an abuse of [the trial court's] discretion." *Threadgill v. Threadgill*, 740 S.W.2d 419, 426 (Tenn. Ct. App. 1987).

Our Supreme Court explained the abuse of discretion standard in *Eldridge v. Eldridge*, 42 S.W.3d 81, 84 (Tenn. 2001). Under that standard, a trial court's ruling

> "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000). A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley,* 6 S.W.3d 243, 247 (Tenn. 1999). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).

After reviewing the record in this case, we find that reasonable minds can disagree as to the reasonableness of Mr. Pepper's fees. Thus, we cannot say that the trial court abused its discretion in awarded Mr. Pepper the full amount of his contracted-for fee.

### C. The Request for a Jury

Mr. Jones also contends that trial court erred by denying him his constitutional right to a jury trial. See Tenn. Const. Art. 1, § 6. However, the right to a jury trial is not self-enforcing in civil cases. *Nagarajan v. Terry*, 151 S.W.3d 166 (Tenn. Ct. App. 2003). Parties who desire a jury trial must file and serve a timely demand. If they fail to so in accordance with Rules of Civil Procedure they will be deemed to have waived their right. Tenn. R. Civ. P. 38.05.

Under Tenn. R. Civ. P. 38.02, any party may demand a trial by jury by including the demand in any of the pleadings authorized by Tenn. R. Civ. P. 7.01 when the pleading is filed, or "by written demand filed with the clerk, with notice to all parties, within fifteen (15) days after the service of the last pleading raising an issue of fact."

Mr. Pepper did not ask for a jury when he filed his complaint on August 3, 2012. Nor did Mr. Jones' pro se "response" to the complaint include any demand or mention of a jury trial. The first mention of a jury in the appellate record is in Mr. Jones' letter of December 2, 2012 to Mr. Maness. Although the letter notes in one corner "copy to the 6th circuit court of Davidson County" it was not filed in the circuit court until May 28, 2013, when Mr. Jones appended it to his motion for continuance. Further, the letter does not actually ask for a jury trial, but merely threatens, "If the Judge allows you to waste taxpayers monies in this manner I will be requesting a jury trial."

Thus, Mr. Jones did not include his jury demand with any pleading, nor did he file a demand with the clerk fifteen days after the service of the last pleading. In fact, Mr. Jones' letter of December 2, 2012 was his only mention of the possibility of a jury trial prior to hearing. Thus, even the most charitable reading of the record does not support Mr. Jones' contention that he made a timely request for a jury trial, and the trial court did not err by refusing to empanel a jury.

## D. The Request for a Continuance

Mr. Jones also takes issue with the trial court's refusal to grant his motion for a continuance. The record shows that Mr. Jones filed the motion for a continuance on May 28, 2013, just eight days before the scheduled trial. His stated reason for the motion was that he was expecting the Chancery Court to enter its findings of facts and conclusions of law in the underlying suit between himself and the contractor, and that the result would show that Mr. Pepper had vastly underestimated the merits of his counter-claim in that case. He also contended that he had filed a timely request for a jury trial, and that a continuance was necessary so the case could be heard by a jury.

As we discussed above, however, a contract for legal representation does not normally include a promise that the client will prevail, and only contingency arrangements condition payment for legal services on the results of litigation. Further, the contract between Mr. Pepper and Mr. Jones specifically stated that Mr. Pepper would not guarantee any specific result. Thus, the possibility that Mr. Jones may have been able to prove at a later date that another attorney represented him more successfully than Mr. Pepper did is not a sufficient justification for a continuance. As for the question of jury trial, we have already concluded that Mr. Jones waived any entitlement to a jury because of his failure to make a timely demand, so a continuance would have served no useful purpose.

Further, Tennessee's trial courts possess broad discretionary authority to control their dockets. *State v. King*, 40 S.W.3d 442, 449 (Tenn. 2001); *Nagarajan v. Terry*, 151 S.W.3d at 172; *Hessmer v. Hessmer*, 138 S.W.3d at 904. This discretion includes decisions regarding

motions for a continuance.  *Blake v. Plus Mark, Inc*., 952 S.W.2d 413, 415 (Tenn. Ct. App. 1995).  Under the circumstances of this case, we do not believe that the trial court abused its discretion in denying Mr. Jones' motion for a continuance.

## IV.

The judgment of the trial court is affirmed.  We remand this case to the Circuit Court of Davidson County for any further proceedings necessary.  Tax the costs on appeal to the appellant, Brett Jones.

_____
BEN H. CANTRELL, SR. J.