IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 26, 2022 Session

## STATE OF TENNESSEE v. NEAL SCOTT DANIELS

**Appeal from the Criminal Court for Knox County**
**No. 112763   Kyle A. Hixson, Judge**

_____

### No. E2021-00561-CCA-R3-CD

_____

During a time when the Tennessee judicial system was grappling with the lingering effects of COVID-19, a Knox County jury convicted Defendant, Neal Scott Daniels, of driving under the influence of an intoxicant ("DUI"); driving with a blood alcohol level in excess of 0.08 percent ("DUI per se"); simple possession of marijuana; driving on a revoked license; failing to provide evidence of financial responsibility; DUI per se fourth offense; and DUI by impairment fourth offense.  The trial court imposed a total effective sentence of two years to be suspended to four years on supervised probation after serving 150 days in jail.  In this appeal as of right, Defendant contends that: 1) the trial court erred by denying his motion to continue on the grounds that courtroom procedures implemented in response to the COVID-19 pandemic interfered with his right to a fair trial; 2) his right to confrontation was denied when he was made to wear a face mask during trial; 3) his right to the effective assistance of counsel was denied by requiring trial counsel and jurors to wear masks; 4) the trial court erred by admitting the results of his blood alcohol test because a valid chain of custody was not established; 5) the judgments of conviction in counts 6 and 7 are invalid because the indictment failed to include the dates of Defendant's prior convictions; and 6) there was insufficient evidence to support Defendant's conviction for simple possession of marijuana.  After a thorough review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

Eric Lutton, District Public Defender; Jonathan Harwell, Assistant District Public Defender (on appeal); and Carter Pack, Tyler Caviness, and Jonathan Harwell, Assistant District Public Defenders (at trial), Knoxville, Tennessee, for the appellant, Neal Scott Daniels.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Greg Eshbaugh, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Pre-Trial Proceedings*

Defendant was charged by indictment on April 10, 2018. A series of trial dates were reset, which the trial court recognized was through no fault of the parties, commenting "cases get bumped." Defendant's trial was set to begin sometime after the Tennessee Supreme Court suspended all in-person court proceedings, including jury trials, due to the COVID-19 pandemic. *In Re: COVID-19 Pandemic*, No. ADM2020-00428 (Tenn. Mar. 13, 2020) (Order) (suspending in-person court proceedings through March 31, 2020); *In Re: COVID-19 Pandemic*, No. ADM2020-00428 (Tenn. Mar. 25, 2020) (Order) (continuing the suspension of in-person court proceedings through April 30, 2020); *In Re: COVID-19 Pandemic*, No. ADM2020-00428 (Tenn. Apr. 24, 2020) (Order) (suspending jury trials through July 3, 2020). On May 26, 2020, the Tennessee Supreme Court issued an order directing that any jury trial commenced after July 3, 2020, "shall strictly comply with courtroom capacity and social distancing requirements applicable at the time of trial." *In Re: COVID-19 Pandemic*, No. ADM2020-00428 (Tenn. May 26, 2020) (Order). On July 9, 2020, the Tennessee Supreme Court issued an order mandating the use of face coverings, specifically requiring all persons entering a courthouse for the purpose of conducting court-related business to wear a face covering over the nose and mouth at all times while inside the building. *In Re: COVID-19 Pandemic*, No. ADM2020-00428 (Tenn. July 9, 2020) (Order).

At a pretrial status hearing on July 14, 2020, defense counsel indicated that he "would be filing a motion to continue to preserve some of our issues about trying to have a jury trial with the pandemic concerns and some of the Constitutional issues with that." The trial court stated that a plexiglass barrier would be installed around the witness stand prior to trial so that witnesses did not have to wear masks while testifying. Defense counsel asked whether attorneys would be required to wear masks during voir dire and opening statements, and the trial court answered, "Everybody else will be required to wear a mask, yes."

On July 15, 2020, Defendant filed a motion to continue, in which he asserted that a jury trial under the then-existing COVID-19 restrictions would 1) violate his Sixth Amendment right to confront witnesses against him; 2) violate his right to the effective

assistance of counsel because face masks would prevent counsel from assessing the jurors' facial expressions, building rapport with the jurors, and engaging and communicating with the jurors; and 3) deprive him of a fair and impartial jury because jurors would be rendered anonymous by their face masks and because jurors' deliberations would likely be impacted by concerns for their health and safety. Defendant also filed a motion to establish trial procedures.

At the July 17, 2020 hearing on Defendant's motion to continue, the trial judge agreed that requiring witnesses to wear masks while testifying did not "align[] with the rights under the Constitution for the defendant to confront and cross-examine the witness." The trial court reiterated that witnesses would testify without masks behind plexiglass. The trial court denied Defendant's motion to continue. The trial court announced the anticipated trial procedures, including that the courtroom would be open to the public, including the media, and that 50 percent of the maximum capacity, or 94 people, would be allowed inside the courtroom. The court announced that all potential jurors would be screened for COVID-19 and that juror seating would be socially distanced.

The trial court found that "the situation that we have here does not equate at all to having an anonymous jury." The court listed information contained in the juror information sheets and noted, "We will have all of the information about these jurors that we've always had. We just won't be able to see their noses and their mouths throughout the course of the trial." The trial court concluded,

> We are simply not in a position where we can indefinitely postpone crucial government function. And few, if any, government functions are more crucial than the proper operation of a criminal justice system. Our justice system is absolutely necessary in a free and ordered society to protect public safety, while ensuring the rights of those accused of criminal offenses.
>
> . . . .
>
> The criminal justice system is absolutely an essential function of the [g]overnment of the free people. And the jury trial has been the cornerstone of this system and Anglo-American jurisprudence since at least the 12th Century. Jury trials have persisted through plagues, famines and World Wars. The Sixth Amendment does not contain an exception for pandemics.
>
> We must continue jury trials in a way that honors our Constitutions and protects the safety of those who are participating. We have taken extensive steps to do just that. And we're ready to proceed with this essential Government function.

- 3 -

On July 21, 2020, the first day of trial, Defendant objected to several trial procedures, including, as relevant to the issues in this appeal, the requirement that jurors wear face masks during voir dire and trial, that Defendant wear a face mask during trial, and that defense counsel wear face masks while addressing the court, witnesses, or jury. The trial court noted that it had two roles to perform, "a purely judicial function" and "an administrative function." The court emphasized that "one of the top administrative duties . . . is to ensure the safety of those people who are participating." The court explained that it had consulted with the Administrative Office of the Courts and public health officials in determining how to conduct jury trials during the pandemic. The trial court found that Defendant's rights were not violated by the requirement that he wear a mask during trial and that he would "be able to see and confront the witnesses" against him. The court further stated that it would allow Defendant to remove his mask "at any point during the trial . . . for a brief period" if either party requested it.

*Evidence at Trial*

At around 5:47 p.m. on May 14, 2017, Knox County Sheriff's Deputy Donnie Shipley was dispatched to a motorcycle accident on East Bullrun Valley Drive. Deputy Shipley observed Defendant's motorcycle "laid over, slid into the guardrail." Defendant appeared to be injured and was leaning against the guardrail. Defendant's breathing was "very heavy, labored, so the smell of alcohol was protruding a lot more." Deputy Shipley also noticed a "pungent odor of marijuana about [Defendant's] person." When asked whether it was a smell of "raw" marijuana or "burnt" marijuana, Deputy Shipley answered, "burnt."

The officers checked Defendant for weapons and found a plastic bag containing marijuana in a cargo pocket on his pants. Defendant was transported to the University of Tennessee Medical Center for treatment of his injuries. While processing the scene, Deputy Shipley found "multiple" unopened cans of beer in storage compartments on Defendant's motorcycle. Deputy Shipley weighed the marijuana found in Defendant's pocket and placed it in a bag. He then placed the bag in a sealed envelope and later placed the sealed envelope in the narcotics locker. Deputy Shipley explained that the narcotics locker was a secure metal mailbox located in the sally port at the City County Building. Items can be put into the narcotics locker but cannot be removed until they are collected by the narcotics division and taken to the Tennessee Bureau of Investigation ("TBI") for analysis. Once the TBI is done with its testing, it will reseal the envelope, sign across the seal, and return the envelope to the Knox County Sheriff's Office where it is placed in the drug evidence vault.

- 4 -

Later that evening, Deputy Shipley went to the hospital to serve a warrant for Defendant's blood sample. Defendant's blood was collected at 12:40 a.m. on May 15, 2017. Deputy Shipley explained that medical staff at the hospital collect two vials of blood, and the officer then seals the vials of blood with the relevant paperwork in a bubble wrap bag, signs across the seal, and places it the TBI blood collection kit box, which the officer also seals. The officer then places the blood kit in a secured locker inside the sally port at the detention center. Deputy Shipley explained that "[t]here's a large wooden locker that's padlocked multiple places." He testified, "the only person that can access that is the officer that's taking [the blood kit] from there to the TBI." He further explained that "one of the evidence technicians from the Knox County Sheriff's [O]ffice takes it to the TBI."

TBI Special Agent Jonathan Thompson testified that blood samples are received through the TBI "blood/alcohol drop box." The door that accesses the drop box is locked and only people who are "permitted into that area [are] allowed to drop something off in there." Agent Thompson explained that a TBI "blood kit" contains two tubes, instructions for drawing and storing the blood, an absorbent material to protect the blood sample, and a toxicology submittal form. When a blood kit is delivered to the TBI for analysis, it is sealed. If the TBI receives a kit that is unsealed or appears to have been tampered with, it is noted. When a kit is received by the TBI, it is assigned a unique identifier number that "follow[s] that sample throughout its journey through the lab."

Agent Thompson testified that the blood sample in this case was received by the TBI on May 19, 2017, at 4:30 p.m. Deputy Shipley completed the toxicology request form. He testified that the blood kit was sealed and did not have any signs of tampering. Agent Thompson's report was admitted as an exhibit. It reflected that the blood alcohol content of the sample was 0.117 percent.

TBI Special Agent Sharon Norman analyzed the plant material seized from Defendant's person. Agent Norman performed three different analyses of the substance. She first performed a macroscopic analysis by looking at the substance with "the naked eye" and recording her visual observations. She noted that it was a green plant material with fluted stems that are characteristic of a cannabis plant. She also performed a microscopic examination of the plant under a microscope, which also indicated characteristics of a cannabis plant. Agent Norman also performed a chemical color test, which "verified that there were cannabinoids present." Agent Norman's report concluded that the plant material was 12.42 grams of marijuana. Agent Norman testified that at the time of her report in this case, testing was not available to distinguish between marijuana and hemp. She acknowledged, "I cannot say if it was marijuana or hemp, but it was in the family of – or the species cannabis."

Defendant did not testify or present any other proof.

## *Analysis*

### *Denial of Motion for Continuance*

Defendant contends that the trial court abused its discretion in denying his motion to continue. Defendant argues that "critical aspects of the fact-finding function of trial were impeded by the health protocols" of the pandemic and that the trial court's denial of a continuance rose to the level of a due process violation. The State asserts that Defendant has not established that he was prejudiced by the trial court's denial of a continuance.

The grant or denial of a continuance rests within the sound discretion of the trial court. *State v. Rimmer*, 250 S.W.3d 12, 40 (Tenn. 2008) (citing *State v. Odom*, 137 S.W.3d 572, 589 (Tenn. 2004)). The decision to deny a continuance will be reversed by this Court "only if it appears that the trial court abused its discretion to the prejudice of the defendant." *Odom*, 137 S.W.3d at 589 (citing *State v. Hines*, 919 S.W.2d 573, 579 (Tenn. 1995)). "An abuse of discretion is demonstrated by showing that the failure to grant a continuance denied defendant a fair trial or that it could be reasonably concluded that a different result would have followed had the continuance been granted." *Hines*, 919 S.W.2d at 579 (citing *State v. Wooden*, 658 S.W.2d 553, 558 (Tenn. Crim. App. 1983)). When a defendant claims that the denial of a continuance constitutes a denial of due process, then he or she must establish actual prejudice. *Rimmer*, 250 S.W.3d at 40 (citing *Odom*, 137 S.W.3d at 589).

Defendant has not shown that the trial court's failure to grant a continuance denied him a fair trial or that there would have been a different result at trial if the continuance had been granted. In his reply brief, Defendant does not dispute the necessity of safety measures taken in response to COVID-19. Rather, he disputes the necessity of a trial during the outbreak of a pandemic. Defendant asserts that there was no reason for his case to proceed to trial other than the court's desire to resume jury trials. He contends that the trial court's "haste" resulted "in a tremendously flawed trial." Quoting the United States Supreme Court's decision in *Ungar v. Sarafite*, Defendant asserts that this was a "myopic insistence on expeditiousness in the face of a justifiable request for delay." 376 U.S. 575, 589 (1964). As the Court later stated in *Morris v. Slappy*, however,

> [t]rial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; *only an*

- 6 -

*unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates [due process].*

461 U.S. 1, 11-12 (1983) (quoting *Ungar*, 376 U.S. at 589) (emphasis added).  Adding to the list of concerns above, conducting jury trials in the midst of a global pandemic brought another set of considerations with which trial judges had not previously been confronted.

We disagree with Defendant that the trial court's desire to resume jury trials was "an unreasoning and arbitrary" exercise of its discretion to deny a continuance. Furthermore, Defendant did not present "a justifiable request for delay."  Defendant's request for a continuance was never based on his counsel's inability to prepare a defense, the unavailability of a witness, or some other reason that could serve to establish that the result of the proceeding would have been different if Defendant had more time. Defendant's only claim has been that conducting a trial during a pandemic is unfair.

Defendant cites the Sixth Circuit Court of Appeals for its definition of actual prejudice: "The defendant demonstrates 'actual prejudice' by showing that a continuance would have made relevant witnesses unavailable or added something to the defense." *United States v. King*, 127 F.3d 483, 487 (6th Cir. 1997).  Defendant asserts that the "something" that a grant of a continuance would have added to the defense would have been counsel's ability to more effectively engage and communicate with the jurors and the witnesses being "forced [ ] to view the defendant" during their testimony.  These two issues are discussed more fully below.  Nonetheless, Defendant essentially asks this Court to presume that a delay in trial until the limitations imposed by the mask requirement and physical distancing were removed would have produced a different result.  Indeed, almost two years after Defendant's trial, face masks are still "strongly encourage[d]" in courtrooms. *In Re: COVID-19 Pandemic*, No. ADM2020-00428 (Tenn. Aug. 26, 2021).

Defendant did not present any testimony or other evidence at the hearing on his motion for new trial to support a showing of actual prejudice.  The trial court's denial of Defendant's request for a continuance did not deny Defendant a fair trial.

*Right to Confrontation*

Defendant contends that his Sixth Amendment right to confrontation was violated by the requirement that Defendant wear a mask during his trial.  While acknowledging that the witnesses who testified in this case were permitted to remove their masks and testify behind a plexiglass barrier, Defendant complains that requiring him to wear a mask during trial undermined his right to face his accusers.  The State responds that Defendant has failed to establish a violation of his right to confrontation.

- 7 -

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  Article 1, section 9 of the Tennessee Constitution states:

> That in all criminal prosecutions, the accused hath the right to be heard by himself and his counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof, to meet the witnesses *face to face*, to have compulsory process for obtaining witnesses in his favor, and in prosecutions by indictment or presentment, a speedy public trial by an impartial jury of the County in which the crime shall have been committed, and shall not be compelled to give evidence against himself.

Tenn. Const. art. I § 9.  (Emphasis added).  "It has long been held that the Confrontation Clause of the Sixth Amendment and art. I, § 9 of the Tennessee Constitution provide two protections for criminal defendants: the right to physically face witnesses and the right to cross-examine witnesses."  *State v. Brown*, 29 S.W.3d 427, 430-31 (Tenn. 2000) (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987); *State v. Middlebrooks*, 840 S.W.2d 317, 322 (Tenn. 1992)).  "The Confrontation Clause is designed 'to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.'"  *State v. McCoy*, 459 S.W.3d 1, 13 (Tenn. 2014) (quoting *Maryland v. Craig*, 497 U.S. 836, 845 (1990)).

The Tennessee Supreme Court has stated, "[W]hen deciding claims based on the right of confrontation provided in article I, section 9, we have expressly adopted and applied the same analysis used to evaluate claims based on the Confrontation Clause of the Sixth Amendment."  *State v. Davis*, 466 S.W.3d 49, 68 (Tenn. 2015) (citations omitted).  Although the Tennessee Supreme Court held in *State v. Deuter*, 839 S.W.2d 391, 395 (Tenn. 1992), that the "face to face" language found in the Tennessee Constitution imposes a higher standard than that found in the federal constitution, it subsequently stated that, "we have found no evidence to have been excluded under our state constitution's confrontation clause that was not also excluded under the federal constitution's counterpart."  *State v. Lewis*, 235 S.W.3d 136, 144 (Tenn. 2007).

The right of confrontation is not absolute and must occasionally give way to considerations of public policy and necessities of the case.  *Rimmer*, 623 S.W.3d 235, 282 (Tenn. 2020).  In *State v. Dennis Lee Seale*, No. M2019-01913-CCA-R9-CD, 2020 WL 4045227, *8 (Tenn. Crim. App. July 20, 2020), *no perm. app. filed*, a panel of this Court considered a confrontation challenge to remote audio-visual testimony of four witnesses who lived out of state and each had various reasons for not travelling to Tennessee to

testify. Recognizing that a compelling public interest might exist that would justify the use of two-way videoconferencing, the panel concluded, "it is in no way constitutionally equivalent to the face-to-face confrontation envisioned by the Sixth Amendment." *Id*. The panel stated, "We are not inclined to remove the requirement of physical presence of a witness in the courthouse, save for instances in which the most necessary public policy considerations arise." *Id*. The panel remanded the case back to the trial court to make specific findings about the public policy implications as to each witness who would testify remotely. *Id*.

The public policy considerations present at the time of Defendant's trial were to ensure the health and safety of those present in the courtroom in the midst of a global pandemic. The trial court ordered Defendant to wear a mask during trial in accordance with an order of the Tennessee Supreme Court mandating the use of face coverings in courthouses. *In Re: COVID-19 Pandemic*, No. ADM2020-00428 (Tenn. July 9, 2020) (Order). Furthermore, every witness who testified against Defendant testified in his physical presence, and only Defendant's nose and mouth were obscured. We are unpersuaded by Defendant's argument that that the requirement that he wear a mask during trial prevented the witnesses from perceiving his presence. *See Coy v. Iowa*, 487 U.S. 1012, 1019-20 (1988) ("A witness may feel quite differently when he has to repeat his story looking at the man whom he will harm greatly by distorting or mistaking the facts."); *United States v. Tagliaferro*, 531 F. Supp. 3d 844, 849 (S.D.N.Y. March 31, 2021).

While the issue of mask-wearing during criminal jury trials has not yet been squarely addressed by Tennessee appellate courts, federal courts have addressed it and "have repeatedly found that requiring participants at trial to wear face masks due to the COVID-19 pandemic does not violate a criminal defendant's constitutional rights." *United States v. Berglund*, No. 20-CR-00200 (SRN/TNL), 2021 WL 1589548, at *1 (D. Minn. Apr. 23, 2021) (collecting cases). The Southern District of New York concluded that the Confrontation Clause did not require that the nose and mouth of the defendant or jurors be visible, although that court's rules permitted witnesses to remove their masks during testimony. *Tagliaferro*, 2021 WL 1225990, at *4. In *United States v. Crittenden*, the Middle District of Georgia advised counsel prior to a criminal jury trial that "all persons entering the courtroom, including parties, lawyers, witnesses, jurors, and spectators" would be "required to wear masks that cover their nose and mouth." No. 4:20-CR-7 (CDL), 2020 WL 4917733, at *5 (M.D. Ga. Aug. 21, 2020) ("Under the specific circumstances presented by the global COVID-19 pandemic, the Court is satisfied that the current mask requirement does not violate the Confrontation Clause."). The district court remarked, "There is no reason to believe that it is any less difficult to tell a lie to a person's face just because the liar's nose and mouth are covered." *Id*. at *6.

We agree with the rationale espoused by the federal courts cited above and conclude that the trial court's enforcing a face mask requirement, as directed by an order of the Tennessee Supreme Court, did not violate Defendant's right to confront witnesses. Defendant is not entitled to relief on this issue.

*Right to Effective Assistance of Counsel*

Defendant next contends that requiring counsel and jurors to wear masks and maintain social distance interfered with his right to the effective assistance of counsel. He argues that "many of the usual approaches to defense advocacy were rendered ineffective or even impossible" by the mask requirement. The State argues that Defendant has failed to establish that the courtroom procedures denied him his right to counsel.

The Sixth Amendment to the United States Constitution provides that in "all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." Similarly, Article I, Section 9 of the Constitution of Tennessee provides "[t]hat in all criminal prosecutions, the accused hath the right to be heard by himself and his counsel." These provisions guarantee criminal defendants the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn.1975).

"Government violates the right to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense." *Strickland*, 466 U.S. at 686 (citing *Geders v. United States*, 425 U.S. 80 (1976) (holding that a bar on attorney-client consultation during overnight recess was a deprivation of right to counsel); *Herring v. New York*, 422 U.S. 853 (1975) (holding that a bar on closing argument at a bench trial was a deprivation of right to counsel); *Brooks v. Tennessee*, 406 U.S. 605 (1972) (holding that bar on defendant taking the stand when he was not called as the first witness was a deprivation of the right to counsel); *Ferguson v. Georgia*, 365 U.S. 570 (1961) (holding that limitation on direct examination of defendant was a deprivation of the right to counsel)). "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The trial court has broad discretion in controlling the course and conduct of trial proceedings. *State v. King*, 40 S.W.3d 442, 449 (Tenn. 2001); *State v. Cazes*, 875 S.W.2d 253, 260 (Tenn. 1994). The trial court "is in the best position to make determinations regarding how to achieve [its] primary purpose [of ensuring a fair trial]." *State v. Franklin*, 714 S.W.2d 252, 258 (Tenn. 1986).

- 10 -

Defendant avers, "The trappings of a trial were present here[,] . . . [b]ut the essence of these stages was vastly altered from the ordinary trial." We disagree that a mask requirement "vastly altered" the trial. Defendant cites no authority supporting the proposition that the constitutional right to the effective assistance of counsel includes the right of a defendant to have his defense counsels' and the jurors' noses and mouths uncovered. We are unaware of any authority that suggests that wearing masks in the courtroom could so greatly diminish counsel's effectiveness as to deny a defendant the effective assistance of counsel. As the court in *Crittenden* noted, "masks will eliminate two aspects of demeanor for the jury to consider: movement of the nose and mouth." *Id.* at *7. The court further explained, "Demeanor includes the language of the entire body." The jurors and counsel could observe the other's eyes and eye movements, facial and body movements, hesitation in speech, and many other languages of the body. We do not believe that any alleged impediments to defense counsel's ability to have "nuanced communication" with the jury rises to the level of a Sixth Amendment violation. Defendant is not entitled to relief on this issue.

## *Chain of Custody*

Defendant contends that the trial court erred in admitting the results of the blood analysis because of a break in the chain of custody. Defendant argues that the State did not present any evidence to establish a link between the kit being placed into the evidence locker by Deputy Shipley and being received at the TBI. The State responds that the trial court acted within its discretion in admitting the evidence.

Tennessee Rule of Evidence 901(a) requires the authentication or identification of evidence as "a condition precedent to [its] admissibility." This requirement is satisfied "by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." Tenn. R. Evid. 901(a). Put another way, "'a witness must be able to identify the evidence or establish an unbroken chain of custody.'" *State v. Cannon*, 254 S.W.3d 287, 296 (Tenn. 2008) (quoting *State v. Scott*, 33 S.W.3d 746, 760 (Tenn. 2000)). This rule "is designed to insure 'that there has been no tampering, loss, substitution, or mistake with respect to the evidence.'" *Id.* (quoting *Scott*, 33 S.W.3d at 760).

Each link in the chain of custody "should be sufficiently established," but the rule "does not require that the identity of tangible evidence be proven beyond all possible doubt; nor should the State be required to establish facts which exclude every possibility of tampering." *Cannon*, 254 S.W.3d at 296 (citing *Scott*, 33 S.W.3d at 760). To that end, the State is not required "to call all of the witnesses who handled the item." *Id.* Rather, "when

the facts and circumstances that surround tangible evidence reasonably establish the identity and integrity of the evidence, the trial court should admit the item into evidence." *Id*. This Court reviews a trial court's determination regarding the chain of custody for an abuse of discretion. *Id*. at 295.

Defense counsel objected at trial to the admission into evidence of the results of the blood alcohol analysis. Citing *State v. John Palladin Gibson*, No. E2017-01567-CCA-R3-CD, 2018 WL 4811086 (Tenn. Oct. 3, 2018), *no perm. app. filed*, defense counsel argued that Deputy Shipley gave no testimony regarding the procedures of evidence handling by the Sheriff's Department. In overruling Defendant's objection, the trial court distinguished the facts in *John Palladin Gibson* in that the deputy in that case "simply handed the sample . . . to somebody working in the forensic department at the sheriff's office. And from that point forward, there was no testimony offered regarding the procedures of the sheriff's office, what the forensic department does with that or how it gets to TBI." The trial court found that Deputy Shipley's testimony that he placed the blood kit in a secure locker to which only evidence technicians have access was sufficient to establish a proper chain of custody.

In *John Palladin Gibson*, a panel of this Court held that the State failed to establish an unbroken chain of custody where the State did not present any proof "about the whereabouts and security of the [d]efendant's blood sample from the time [the deputy] gave it to the Forensic Department until it was received in the TBI Laboratory's evidence drop box six days later." *Id*. at *7. The panel concluded that the proof failed to establish the normal procedures for handling the evidence to ensure the integrity of the evidence. 2018 WL 4811086, at *8. The distinction between the evidence presented in that case and the evidence presented in this case is that Deputy Shipley testified that he deposited the sealed blood kit into the secure evidence box, to which only evidence officers have access; whereas the deputy in *John Palladin Gibson* testified that he delivered the defendant's blood kit to a person whose name he could not recall in the forensic department of the sheriff's office. *Id*. at *2. That person did not testify as to what he or she did with the sample after receiving it. *Id*.

Other cases have concluded that the chain of custody was adequately established when the State did not present testimony from every link in the chain but when there was testimony that the evidence was kept in a secure manner and that there was no indication of tampering. *See, e.g. State v. Earnest Laning*, No. E2011-01882-CCA-R3-CD, 2012 WL 3158782, at *3 (Tenn. Crim. App. Aug. 6, 2012) (chain of custody established by testimony that blood was collected, sealed in a box, and stored in a secure location, and its receipt by the TBI indicated no tampering), *no perm. app. filed*; *State v. Randy Timothy Jones*, No. M2017-00769-CCA-R3-CD, 2018 WL 1182573, at *5-6 (Tenn. Crim. App. Mar. 7, 2018) (chain of custody established by the trooper's testimony that he witnessed the collection of

the blood, labeled and sealed it, put it into a locked evidence drop box, and the agent's testimony that the forensic technician received the box and that it was sealed with no indication of tampering), *no perm. app. filed*; *State v. Pascasio Martinez*, No. E2016-01401-CCA-R3-CD, 2017 WL 5613976, at *3 (Tenn. Crim. App. Nov. 21, 2017) (chain of custody established by testimony that the evidence was stored and received in a secured manner, that a notation would have been made of any tampering, and that the samples appeared undisturbed), *perm. app. denied* (Tenn. Mar. 15, 2018); *State v. Kevin Allen Fleming*, No. E2016-01746-CCA-R3-CD, 2018 WL 1433503, at *15-17 (Tenn. Crim. App. Mar. 22, 2018) (chain of custody established when the trooper observed the collection of the blood, sealed the kit, and took it to a secure evidence locker, and when the TBI agent testified regarding the integrity of the evidence once it was placed into the TBI drop box), *perm. app. denied* (Tenn. July 18, 2018).

Here, Deputy Shipley testified that the procedure for collecting a blood sample was followed. Deputy Shipley sealed the blood collection kit and delivered it to a secure evidence locker, which he explained could only be accessed by evidence officers whose job it was to deliver blood kits to the TBI for analysis. Special Agent Thompson testified that blood samples are received by the TBI through a locked drop box. He explained that when a blood kit is received that shows any signs of tampering, it is noted, and the blood kit did not have any indication of tampering.

This evidence is sufficient to establish an unbroken chain of custody, and the trial court did not abuse its discretion in admitting the results of Defendant's blood analysis.

*Validity of Indictment*

Defendant challenges his conviction for fourth offense DUI because the indictment included the dates of the prior offenses rather than the dates of conviction as required by statute. The State responds that the indictment was sufficient. We agree with the State.

A defendant subject to enhanced penalties as a multiple offender must be given notice that he or she is subject to mandatorily increased punishment for a second or subsequent DUI offense in order to comply with due process. In the prosecution of second or subsequent offenders, Tennessee Code Annotated section 55-10-411(b)(2) requires that the indictment or charging instrument allege the prior convictions, "setting forth the time and place of each prior conviction or convictions."

Tennessee Code Annotated section 40-13-202 requires an indictment to "state the facts constituting the offense in ordinary and concise language . . . in such a manner as to enable a person of common understanding to know what is intended, and with that degree

- 13 -

of certainty which will enable the court, on conviction, to pronounce the proper judgment. . . ." Generally, an indictment is valid "if it provides sufficient information '(1) to enable the accused to know the accusation to which answer is required, (2) to furnish the court adequate basis for entry of a proper judgment, and (3) to protect the accused from double jeopardy.'" *State v. Duncan*, 505 S.W.3d 480, 484-85 (Tenn. 2016) (quoting *State v. Hill*, 954 S.W.725, 728 (Tenn. 1997)).

The indictment in this case alleged in counts 6 and 7 that Defendant "was in violation and convicted of the offense of DUI" in case number 102843 on October 4, 2013, in the Criminal Court for Knox County, Tennessee; in case number 60492 on September 2, 2010, in the General Sessions Court for Union County, Tennessee; in case number 60169 on July 29, 2010, in the General Sessions Court for Union County, Tennessee; and in case number 3643 on May 3, 2008, in the Criminal Court for Union County, Tennessee. At trial, the State introduced certified copies of the judgments in those cases, which reflect that the dates listed in the indictment were the offense dates rather than the conviction dates.

Notably, Defendant never filed a motion to dismiss counts 6 and 7 of the indictment or a bill of particulars. The fact that the indictment states the dates of the prior offenses rather than the dates of the prior convictions does not mean that Defendant was not apprised of the accusation against him. The indictment set forth the case numbers and convicting courts for each prior conviction. The discrepancy in dates does not invalidate the indictment. Defendant is not entitled to relief on this issue.

*Sufficiency of the Evidence*

Defendant lastly challenges the sufficiency of the evidence to sustain his conviction for simple possession of marijuana because the State failed to prove that the substance seized was marijuana rather than hemp. The State responds that the evidence was sufficient.

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence

. . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). A conviction may be based upon circumstantial evidence alone. *See Dorantes*, 331 S.W.3d at 380-381.

It is unlawful to "knowingly possess or casually exchange a controlled substance." T.C.A. § 39-17-418(a). A person "acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." T.C.A. § 39-11-302(b). At the time of the offense, marijuana was defined as "all part of the plant cannabis" but did not include industrial hemp. T.C.A. § 39-17-402(16) (2017). In 2019, the possession of all hemp was legalized in Tennessee. T.C.A. § 39-17-402(16) (2019).

Deputy Shipley testified that he smelled a pungent odor of burnt marijuana about Defendant's person. A clear plastic bag containing a substance that Deputy Shipley recognized as marijuana was found in Defendant's pants pocket. We conclude that this evidence provided sufficient evidence for the jury to conclude that Defendant possessed marijuana. Agent Norman concluded that the substance was marijuana based on three types of analyses. Agent Norman acknowledged that at the time of testing in 2017, her analysis did not distinguish between marijuana and hemp, both of which belong to the cannabis species.[1] We note that at the time of the offense, a legal distinction did not exist between marijuana and non-industrial hemp, as possession of both substances was unlawful. *State v. John Bradford Underwood, III*, No. E2020-01080-CCA-R3-CD, 2021 WL 6013938, at *4 (Tenn. Crim. App. Dec. 16, 2021), *perm. app. filed* (Tenn. Feb. 15, 2022).

We conclude that the evidence was sufficient for a rational trier of fact to conclude that Defendant possessed marijuana. *See State v. Kentrel Ne'Air Siner*, No. W2020-01719-CCA-R3-CD, 2022 WL 252354, at *8 (Tenn. Crim. App. Jan. 27, 2022) (finding sufficient evidence that the defendant was in constructive possession of marijuana when the

---

[1] On April 4, 2019, the possession of hemp was legalized in Tennessee. Hemp is defined as Cannabis sativa containing not more than 0.3% THC, and marijuana is defined as Cannabis sativa containing greater than 0.3% THC. See T.C.A. §§ 39-17-14 (2019); 43-27-101 (Supp. 2020).

substance was not forensically tested), *no perm. app. filed*.  Defendant is not entitled to relief.

CONCLUSION

Based on the foregoing, we affirm the judgments of the trial court.

_____

TIMOTHY L. EASTER, JUDGE